UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SECURUS TECHNOLOGIES, INC., )<br>    *Plaintiff*, )<br>  )<br>*vs*. )<br>  )<br>COMBINED PUBLIC COMMUNICATIONS, INC., )<br>    *Defendant.* ) | 1:11-cv-1447-JMS-TAB |

## ORDER

Presently before the Court in this alleged patent-infringement action is Defendant Combined Public Communications, Inc.'s ("CPC") Motion to Transfer Venue Under 28 U.S.C. § 1404(a). [Dkt. 16.]

### BACKGROUND

Plaintiff Securus Technologies, Inc. ("Securus") is a Delaware corporation based in Dallas that is in the business of providing patented telecommunications technology to jails that, among things, let jail staff monitor inmate phone calls. [Dkt. 1 ¶¶1, 6, 7.] Securus operates in a corporate family that includes an entity called T-Netix, Inc. [Dkt. 16-3.]

CPC, incorporated in Ohio and based in Kentucky, competes with Securus in several states, including Indiana and Kentucky. [Dkt. 1 ¶¶2, 8; dkt. 17 at 1; dkt. 33-2 ¶8.] Rather than using its own technology, it uses the "Nexus" telephone system that it purchased from a third party called Lattice, Inc. [Dkt. 17-1 ¶6.] The Lexus system "consists of two centralized call control servers and seven call validation platforms located in Cold Spring, Kentucky. CPC pays Lattice to provide the inmate telephone systems and for servicing such systems." [*Id.* ¶¶6-7.]

CPC is currently litigating in two forums regarding whether it has the right to use the technology it uses to compete against Securus. First, T-Netix has sued CPC in the Western Dis-

trict of Kentucky (the "Kentucky Litigation"). [Dkt. 17-6.] Second, Securus has sued CPC here, claiming a violation of Securus' '167 Patent[1], a patent not at issue in the Kentucky Litigation.

### A. The Kentucky Litigation

With the help of lead counsel that Securus would retain for the action here, T-Netix has been litigating against CPC since 2009 in the Western District of Kentucky, alleging infringement of T-Netix' '323, '013, and '583 Patents. *See T-Netix, Inc. v. Combined Public Communications, Inc.*, 3:09-cv-743-S (W.D. Ky.). In its defense of that action, CPC claims that because it does not repackage or privately label the technology that it uses from Lattice, only Lattice can be responsible for any infringement of T-Netix' patents. [*See* dkt. 17-1 ¶9.]

A magistrate judge held an unsuccessful settlement conference in March 2011. [Dkt. 17-5.] At the conclusion of that conference, he gave T-Netix forty-five days to amend its pleadings and to join additional parties. [*Id.*] In response, T-Netix amended its complaint to include a claim for infringement of the '355 Patent. It did not, however, seek to join Securus as plaintiff, so as to assert a claim for violation of the '167 Patent at issue here.

T-Netix' failure to join Securus to the Kentucky Litigation stands in sharp contrast to T-Netix' actions in a case pending in the Eastern District of Texas, captioned *T-Netix v. Pinnacle Public Services, LLC*, No. 2:09-cv-333-DF (the "Texas Litigation"). As with the Kentucky Litigation, the action began with T-Netix' claims involving (among others) the '323, '013, and '583 Patents. In May 2011, however, T-Netix moved for leave to amend its complaint, to join Securus so that Securus could assert a claim for the '167 Patent—the patent at issue here. [*See* dkt. 50-1.] In support of its motion, T-Netix argued that "adding the '167 Patent would have limited impact, because the accused device remains the same and essentially the same technolo-

---

[1] The full patent numbers referenced in this opinion are longer, but irrelevant.

gy is at issue" and that the "modest impact on the claim construction schedule would be outweighed by the potential waste in bringing a separate lawsuit between the same parties involving the same accused instrumentalities." [Dkt. 50-1 at 7.]

In any event, response to the amended complaint in the Kentucky litigation, CPC asserted a third-party complaint against Lattice. *T-Netix, Inc. v. Combined Public Communications, Inc.*, 3:09-cv-743-S [dkt. 58]. The litigation remained essentially on hold while the court had under advisement CPC's motion to dismiss T-Netix' amended complaint and Lattice's motion to dismiss CPC's third-party complaint—motions that the court denied on March 30, 2012. *Id.* at [dkt. 84]. Thus, the Kentucky Litigation is ready to proceed in earnest.

### B.  This Lawsuit

As Securus sees it, CPC has unfairly won several contracts for telephone monitoring of Indiana county jails, with the help of the technology that CPC uses that allegedly infringes upon the '167 Patent. [*See* dkt. 33-2 at ¶¶8-11.] Accordingly, Securus filed this action in October 2011. In defense, CPC claims that two agreements that were produced in the Kentucky Litigation, [*see* dkt. 33-1 ¶5], involving Lattice, T-Netix, and Securus give CPC a license to practice the inventions in the '167 Patent.

With the exception of this ruling, the Court has not yet issued any substantive orders or held any conferences with the parties.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). CPC's motion asks the Court to transfer this action to the Western District of Kentucky, and there is no dispute, [*see* dkt. 33], that Securus could have filed this action originally in that District, but did not.

Although the Federal Circuit supervises the Court in this action, it will apply the law of the Seventh Circuit regarding transfers of venue. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit…." (citation omitted)). And in the Seventh Circuit, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).[2] Given its potentially dispositive nature, the Court will begin with a discussion the interest of justice, before considering the relative convenience of the parties and the witnesses of the two venues.

## A. Interest of Justice

As a separate element of the transfer analysis, the interest of justice considers "the efficient administration of the court system." *Id.* (citation omitted). Typically, courts evaluating this element "look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citations omitted).

---

[2] Applying the law of the Fifth Circuit, the Federal Circuit called dicta *Coffey*'s "strong statement" about the independent considerations of judicial economy. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). To the extent that *Research Automation*'s reaffirmation of *Coffey*'s dicta might also be characterized as dicta—a question not considered in *In re Vistaprint*—the Court notes that the Seventh Circuit has cautioned lower courts to avoid "treat[ing] lightly" dicta "until disavowed," *Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980). Given the Seventh Circuit's strong concerns about judicial economy, *see, e.g.*, *Neal v. Honeywell Inc.*, 191 F.3d 827, 830 (7th Cir. 1999) (reviving, for reasons of judicial economy, an ultimately meritorious argument made below but not raised on appeal because "[s]ometimes the judiciary must act in self-defense"), the Seventh Circuit does not appear likely to disavow *Coffey / Research Automation* anytime soon. This Court will act accordingly.

The speed-to-trial factor favors transfer to the Western District of Kentucky. According to the most recent figures from the Administrative Office of the U.S. Courts, civil actions in the Western District of Kentucky had to wait 25.7 months from filing to trial, while the median in this District was 31 months.[3] Securus correctly notes that, as a median measure, some cases in this District resolve themselves sooner than 31 months. [*See* dkt. 33 at 22-23.] But it incorrectly suggests that the two-year-old Kentucky Action suggests that this action, too, would proceed slowly in that venue. Given the similarities between the two actions, they could likely be consolidated for pretrial purposes. Thus, the Western District of Kentucky's case-management groundwork in the Kentucky Action should speed up this action's resolution.

While Securus also argues that "transferring this suit to Kentucky would subject the suit to the factors that are bogging down the Kentucky Litigation and, thereby, delay resolution of both suits," [dkt. 33 at 22], the Court finds no basis for that claim. The Kentucky Litigation is currently ready to proceed now that the motions to dismiss the pleadings have been resolved.

As for each District's relative familiarity with governing law, that consideration is essentially neutral where, as here, federal law governs. *See, e.g.*, *Coffey*, 796 F.2d at 221 ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." (citation omitted)).

The third consideration, "the respective desirability of adjudication in each locale," *Research Automation*, 626 F.3d at 978, strongly favors transfer. As Securus itself acknowledged in the Texas Litigation, judicial economy is advanced by considering the '167 in the same litigation as the '323, '013, and '583 Patents. [Dkt. 50-1 at 7.] A transfer would enable discovery to be better coordinated between Securus and its related company T-Netix on the one hand and CPC

---

[3] http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/C05Sep11.pdf (last accessed April 5, 2012).

on the other. It would enable the magistrate judge there to explore a global settlement between the parties. To the extent that *Markman* rulings will be necessary, a transfer would provide economies because only one judge would have to learn about CPC's / Lattice's technology. Likewise, only one judge would have to construe the agreements that CPC says give it a license to use the '167 Patent but which Securus argues only apply to the patents at issue in the Kentucky Litigation, [dkt. 33 at 18]. And transfer might enable the district judge in Kentucky to manage the Kentucky Litigation and this litigation so as to permit a consolidated appeal, furthering judicial economy at the appellate level, too.

Finally, regarding the relationship that the community of each venue has to the controversy, it is neutral. Indiana has an interest in ensuring that its jails are provided communications-monitoring services at the cost called for by open and fair competition. Kentucky, home to CPC, has an interest in ensuring that corporations headquartered there comport with applicable laws.

Given the desirability of having one judge preside over this action, the possibility that this action could be resolved sooner in the Western District of Kentucky, and the neutrality of the remaining considerations, the Court finds that the interest of justice strongly supports a transfer to the Western District of Kentucky.

### B. Convenience of the Parties and Witnesses

The second branch of the transfer analysis considers the "convenience of parties and witnesses." 28 U.S.C. § 1404(a). Factors relevant to this "convenience" inquiry include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, 2006 U.S. Dist. LEXIS 98674, *10-11 (S.D. Ind. Mar. 23, 2006) (citation omitted) (Hamilton, J.).

As for Securus' choice of forum, the Court must give it some weight. The Court will not, however, afford it very much because Securus is based out of Texas, not Indiana. "When the plaintiff's choice is not its home forum … the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quotations omitted).

The situs-of-material-events factor is either neutral or slightly tips in favor of Kentucky. From Securus' perspective, "Indiana is as much the situs of material events in this suit as Kentucky" because Securus suffered damages in Indiana, from alleged infringement in Kentucky. [*Id.* at 11.]

The third factor, ease of access to sources of proof, is neutral. Neither party contends that this factor applies here.

As for the convenience of the witnesses, this factor weighs in favor of transfer. No third-party witnesses are located in either Indiana or Kentucky. [*See* dkt. 33 at 14.] As for Securus' controlled witnesses, it admits that "most of them live and work in or around Dallas, Texas." [Dkt. 33 at 14.] While it does have one field technician who lives in Indiana, it has another who lives in Kentucky. [*Id.*] Litigating here versus there is, for Securus, a wash. In contrast, Securus does not dispute that "CPC's employees who might testify in this suit live or work in Kentucky." [*Id.*] While Securus attempts to downplay the distance the employees, it concedes that trial in Kentucky would be closer for CPC's employees than a trial in Indianapolis. [*Id.*]

The final factor also weighs in favor of a transfer. Because CPC is headquartered in Kentucky, litigating there is clearly easier for it. As for Securus, it does not claim that litigating in Kentucky will be any more burdensome than litigating here would be. [*See* dkt. 33.] Indeed, its

sister company is already litigating a similar patent-action there, with the help of the same counsel as Securus has here. While transfers should not ordinarily "merely shift[] inconvenience from one party to another," *Research Automation*, 626 F.3d at 978, a transfer to the Western District of Kentucky would make CPC better off without making Securus any worse off, an efficient result.

In summary, Securus' choice of forum weighs against transfer, but only slightly because it has sued away from its home forum. Considerations of convenience to the witnesses and to the parties weigh in favor of transfer. The other convenience factors are neutral. On balance, the Court finds that the convenience branch of the transfer inquiry weighs in favor of transfer.

## CONCLUSION

Transferring this action to Kentucky would strongly promote the interest of justice. And it will improve the convenience of the witnesses and the parties. Under the circumstances, transfer is "clearly" proper, *Coffey*, 796 F.2d at 220 (citation omitted). The Court will, therefore, **GRANT** CPC's motion to transfer. [Dkt. 16.] The Clerk is directed to transfer this action to the Western District of Kentucky, Louisville Division.

04/11/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Stephanie D. Clouston
ALSTON & BIRD LLP
stephanie.clouston@alston.com

G. Michael Gruber
GRUBER HURST JOHANSEN HAIL SHANK
mgruber@ghjhlaw.com

Michael J. Lang
GRUBER HURST JOHANSEN HAIL SHANK
1445 Ross Avenue, Suite 2500
Dallas, TX 75202

Anthony J. Magee
GRUBER HURST JOHANSEN HAIL SHANK
amagee@ghjhlaw.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com

Jared M. Slade
ALSTON & BIRD LLP
jared.slade@alston.com

Bradley M. Stohry
ICE MILLER LLP
stohry@icemiller.com

Robert E. Weitzel
GRUBER HURST JOHANSEN HAIL SHANK
rweitzel@ghjhlaw.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com